UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GARY LEE LEISTER,

                Petitioner,

v.                                   Case No. 3:19-cv-1020-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.

_____

**<u>ORDER</u>**

**I. Status**

Petitioner Gary Lee Leister, an inmate of the Florida penal system, initiated this action on August 27, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Leister challenges a 2014 state court (Duval County, Florida) judgment of conviction for second degree murder. He raises nine claims. <u>See</u> Petition at 15-32. Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Amended Response (Doc. 11). They also submitted exhibits. <u>See</u> Docs. 8-1

---

[1] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

through 8-11. Leister filed a brief in reply. <u>See</u> Reply (Doc. 21).  This action is ripe for review.

## II. Relevant Procedural History

On March 6, 2008, the State of Florida charged Leister with second degree murder in Duval County case number 2008-CF-2311. <u>See</u> Doc. 8-1 at 41. Leister entered a guilty plea to the charge on October 23, 2013. <u>See</u> Doc. 8-2 at 21; <u>id.</u> at 29-45, Transcript of the Plea Proceeding. On April 3, 2014, the court sentenced Leister to a term of imprisonment of twenty-six years. <u>See id.</u> at 85-90, Judgment.

On direct appeal, Leister, with the benefit of counsel, filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). <u>See</u> Doc. 8-4 at 2-14. Leister also filed a pro se brief. <u>See</u> Doc. 8-5 at 2-10. The State did not file an answer brief. <u>See</u> Doc. 8-6 at 2. On November 10, 2014, the First District Court of Appeal (First DCA) affirmed Leister's conviction and sentence per curiam without issuing a written opinion, <u>see</u> Doc. 8-7 at 4, and on December 8, 2014, the court issued the mandate, <u>see id.</u> at 3.

On March 23, 2015, Leister filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. <u>See</u> Doc. 8-8 at 5-17. In his Rule 3.850 motion, Leister asserted that his trial counsel were ineffective because: Quentin Till failed to request a competency hearing upon Leister's return from involuntary hospitalization (ground one), <u>see id.</u> at 7-9; Michael

Bateh misadvised Leister to enter a guilty plea (ground two), see id. at 9-11; and Amanda Kuhn failed to file an adequate motion to withdraw the plea (ground three), see id. at 11-12. He also asserted that the cumulative effect of counsels' errors entitled him to postconviction relief (ground four). See id. at 12-13. On June 3, 2015, Leister asked for the court's permission to add a claim: specifically, that Michael Bateh was ineffective because he interfered with Leister's right to withdraw his guilty plea (ground five). See id. at 18-23. On February 13, 2018, the postconviction court denied Leister's request for postconviction relief, as to the five claims. See id. at 35-135. On appeal, Leister filed a pro se brief, see Doc. 8-9 at 2, and the State filed a notice that it did not intend to file an answer brief, see Doc. 8-10 at 2. On June 6, 2019, the First DCA affirmed the court's denial of postconviction relief per curiam, see Doc. 8-11 at 3, and on August 15, 2019, the court issued the mandate, see id. at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a

3

hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Leister's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'"

Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S.

Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016); <u>see</u> <u>Teasley v. Warden, Macon State Prison</u>, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

Richter, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92), cert. denied, 140 S. Ct. 394 (2019). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

8

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. Additionally, the United States Supreme Court has long recognized that <u>Strickland</u>'s two-part inquiry applies to ineffective-assistance-of-counsel claims arising out of the plea process. <u>See Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985). The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is
> a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131
> S.Ct. at 788. But "[e]stablishing that a state court's
> application of <u>Strickland</u> was unreasonable under §
> 2254(d) is all the more difficult. The standards created
> by <u>Strickland</u> and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review
> is doubly so." <u>Id.</u> (citations and quotation marks
> omitted). "The question is not whether a federal court
> believes the state court's determination under the
> <u>Strickland</u> standard was incorrect but whether that
> determination was unreasonable — a substantially
> higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.

Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference — this one to a state court's decision — when we are

considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,

"[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v.

Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Grounds One and Six

As grounds one and six, Leister asserts that counsel (Assistant Public Defender Quentin Till, Florida Bar #121330) failed to request a competency hearing upon Leister's return from involuntary hospitalization. See Petition at 15-19, 27; Reply at 2. Leister raised these ineffectiveness claims in his Rule 3.850 motion (ground one). See Doc. 8-8 at 7-9. The postconviction court denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> Defendant claims counsel was ineffective for failing to request a competency hearing upon Defendant's return from involuntary hospitalization. Defendant further asserts the parties never agreed to have the Court make a determination regarding Defendant's competency based solely on the treatment facility's report, and the Court erroneously assumed that the issue of Defendant's competency had been stipulated by both parties.
>
> Defendant's claim is refuted by the record. Contrary to Defendant's assertion, the Court held a competency hearing upon Defendant's return from involuntary hospitalization and the parties did not contest Defendant's competency. (Ex. D.)[4] The Court had the report finding Defendant competent to proceed and had reviewed the findings included in the report. That report was entered into evidence upon stipulation by the parties. (Ex. D at 5-6.) Both parties indicated they did not wish to present any other evidence on the issue of Defendant's competency. (Ex. D at 5-6.) Based thereon, the Court found Defendant competent to proceed. (Ex. D at 3-6.)

---

[4] See Doc. 8-8 at 55-62.

That hearing and the Court's determination that Defendant was competent to proceed were sufficient to satisfy the hearing requirements provided in Florida Rule of Criminal Procedure 3.212. See Merriell v. State, 169 So. 3d 1287, 1288-89 (Fla. 1st DCA 2015) (finding trial court made an independent determination of competency when, at the competency hearing, the court had the competency evaluation, reviewed the evaluation, and found the defendant competent to proceed). Further, as stated above, the parties did not contest Defendant's competency and stipulated to the competency report being entered into evidence. Based on the foregoing, the Court finds counsel was not ineffective as alleged by Defendant in Ground One.

Though not specifically raised by Defendant, it is important to note, however, the Court did not enter a written order adjudicating Defendant competent to proceed, as required by Rule 3.212. However, in addressing this same error in other cases, the appellate court has simply remanded for the trial court to enter a nunc pro tunc order adjudicating the defendant competent to proceed. Merriell, 169 So. 3d at 1289; Powell v. State, 28 So. 3d 958, 958 (Fla. 1st DCA 2010). The failure to enter a written order in the instant case does not constitute fundamental error and Defendant was not prejudiced by any failure of counsel to request such order. Further, the issue should have been raised on direct appeal. Accordingly, Ground One is denied.

Id. at 36-37. The First DCA affirmed the postconviction court's denial of relief. See Doc. 8-11 at 3.

To the extent that the appellate court decided Leister's claims on the merits,[5] the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Leister is not entitled to relief on the basis of these ineffectiveness claims.

Nevertheless, even if the appellate court's adjudication of the claims is not entitled to deference, Leister's ineffectiveness claims are without merit because the record supports the postconviction court's conclusion. There is a strong presumption in favor of competence when evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.[6] The inquiry is "whether,

---

[5] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1192.

[6] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc); <u>see</u> <u>Franks v. GDCP</u>

in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Leister must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense

---

Warden, 975 F.3d 1165, 1176 n.1 (11th Cir. 2020); Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney). Quentin Till was admitted to the Florida Bar in 1969. See https://www.floridabar.org. Thus, at the time of the January 23, 2009 competency hearing, Till had been practicing criminal defense law for almost thirty years.

counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

A brief chronology relating to the competency issue follows. On March 31, 2008, Assistant Public Defender Hanania filed a Suggestion of Mental Incompetence to Proceed, requesting that the court direct one or more court-appointed mental health experts to determine Leister's mental competence to proceed and report their findings to the court. See Doc. 8-1 at 50-52. On May 16, 2008, the court determined that Leister was incompetent to proceed and met the criteria for commitment to a Florida Department of Children and Families (DCF) mental health treatment facility. See id. at 58. On October 14, 2008, DCF sent a letter to the court, stating in pertinent part:

> Enclosed is the current competency evaluation on the above referenced individual, prepared by his treatment team at Florida State Hospital.
>
> As indicated in the enclosed evaluation, the professional treatment staff at this facility [is] of the opinion that this resident is competent to proceed and no longer meets the criteria for continued involuntary commitment. The resident is ready to be returned to your jurisdiction for a hearing within thirty days of receipt of this report, as required in Rule 3.212(c)(6), Florida Rules of Criminal Procedure.

Id. at 61 (emphasis deleted).[7] The court addressed the competency issue at a

---

[7] See Petition at 28 ("After 6 months of treatment and competency groups[,] the hospital removed the involuntary hold and returned [Leister] to the county jail finding him competent to proceed.").

January 23, 2009 hearing, at which Leister and counsel Till were present. <u>See</u>

Doc. 8-8 at 57. At the hearing, Till referenced the DCF letter and  explained

his concerns, stating in pertinent part:

> Your Honor, I inherited this case on January 6th when I went with the Public Defender's Office.
>
> Mr. Leister is charged with second-degree murder. He was sent to Florida State Prison in October. There is a letter addressed to you, October 14th, Your Honor, along with a report saying that he is competent to proceed and no longer meets the criteria for continued involuntary commitment.
>
> Since that time[,] he has been seen by Dr. Miller, who -- I'm asking for about a two-week continuance because Dr. Miller in his recent evaluation of Mr. Leister talks about still continuing with insanity, so has provided me a report or the office a report. I want to talk to him in a little bit more detail to see whether to proceed with an insanity defense.
>
> I do not see if anything has ever been done with this case as far as preparing it for trial. There are no depositions, so it looks like we're starting from scratch.
>
> So[,] what I'm asking for is I'll get with Mr. Moody, who is going to be handling it for the state, but maybe a two-week continuance to let me find out whether my office does have -- has done something in regard to the preparation of this case for trial and then figure out where we go with the case and then maybe to setting it sometime in the -- I don't mean quick future, but give us time to start working on discovery.
>
> There are in the report from Florida State [Hospital], there's a lot of concerns and recommendations by the institution regarding how Mr. Leister is to be treated here pending [the] outcome

of his case. There may be some suicidal impulses they talk about. He needs to continue on with his medication that they have -- have thought that he needed to be taking at this time.

So[,] I'll go over to the jail and burn them a copy of this order to make sure that they are doing their job pretrial wise with Mr. Leister.

Id. at 57-58. The following colloquy then ensued:

THE COURT: One thing is since the hospital says he's competent, apparently, but Dr. Miller says he's competent but insane, we should go ahead and rule on the competency issue today because there is no evidence of any real --

MR. TILL: Anything otherwise.

THE COURT: Right.

[PROSECUTOR]: Maybe I misunderstood Mr. Till then. I thought he was contesting it, but …

MR. TILL: No, no, so …

[PROSECUTOR]: You're not contesting competency?

MR. TILL: No, at this time, Your Honor, we're not.

[PROSECUTOR]: I thought…

THE COURT: So[,] we can go ahead and stipulate this report into evidence?

MR. TILL: Yes, Your Honor, we can.

[PROSECUTOR]: Yes.

THE COURT: I'll admit the report signed by Dr. Robert Chipwood, the senior psychologist of the hospital, with a cover letter from Michael McCorman dated October 14th, 2008, into evidence as the Court Exhibit No. 1. And does either side have anything other than that to offer on the issue of competency?

MR. TILL: No, Your Honor.

[PROSECUTOR]: No, Your Honor.

THE COURT: Based upon that[,] I find that Mr. Leister is competent, and I will pass the case to February 4th for a status hearing, and then both sides can see which way they want to go here.

Id. at 59-60.

On this record, Leister has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming arguendo deficient performance by defense counsel, Leister has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Leister asserts he should have. His ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Leister is not entitled to federal habeas relief on the ineffectiveness claims raised in grounds one and six.

## B. Grounds Two and Seven

As grounds two and seven, Leister asserts that counsel (Michael Bateh, Florida Bar #506737) was ineffective because he misadvised Leister to enter a guilty plea to second degree murder when he knew that Leister was incompetent and under the influence of psychotropic drugs and blood pressure medication. See Petition at 15-16, 19-21, 27; Reply at 2. Leister raised these ineffectiveness claims in his Rule 3.850 motion (ground two). See Doc. 8-8 at 9-11. The postconviction court denied the Rule 3.850 motion with respect to the claims, stating in pertinent part:

> Defendant claims counsel, Michael Bateh, was ineffective when he affirmatively misadvised Defendant to accept a plea. Defendant reiterates the claim raised in Ground One and further claims that counsel advised him to lie during the plea colloquy when the Court inquired as to whether Defendant was taking any medication. He asserts his use of psychotropic medications rendered him mentally incompetent to enter a plea.
>
> During the plea colloquy, Defendant stated under oath that he was thinking clearly[,] and he was not under the influence of any alcohol or any medication, drug or any other substance or anything that could interfere with his clear thought. (Ex. E at 6.)[8] Further, the Court stated, "[y]ou certainly appear to be thinking quite clearly." (Ex. E at 6.) Additionally, Defendant stated he read everything on the Plea of Guilty form ("Plea Form"), he understood everything on the Plea Form, his attorney went over

---

[8] See Doc. 8-2 at 34.

everything on the Plea Form with him and answered all of his questions and fully explained the Plea Form, and he signed the Plea Form after reading and understanding it. (Ex. E at 7-8.)[9] In the Plea Form, Defendant stated the Plea Form "is true and correct in all respects." (Ex. A at 2.)[10] He also stated, "I am not under the influence of any substance, drug, or condition (physical, mental, or emotional), which interferes with any appreciation of the entire agreement into which I am entering and all consequences thereof." (Ex. A at 2.) During the plea colloquy, the Court also discussed Defendant's hearing difficulty with him and informed Defendant to let the Court know if he did not hear or understand anything the Court said. (Ex. E at 6-7.)[11]

Based on Defendant's clear affirmance that he was not under the influence of any medication, drug, or other substance, which wholly contradicts his present postconviction claim, the Court finds Defendant is not entitled to relief. See Russ v. State, 937 So. 2d 1199, 1200 (Fla. 1st DCA 2006) (upholding trial court's summary denial of Defendant's claim that his plea was involuntary because he was under the influence of psychotropic medication at the time of the plea because Defendant categorically denied being under the influence of medication at his plea hearing). Further, of note, at the hearing on Defendant's Motion to Withdraw Plea, Defendant stated when he entered his plea, he understood everything that was taking

---

[9] See Doc. 8-2 at 35-36.

[10] See Doc. 8-2 at 22.

[11] See Doc. 8-2 at 34-35.

place and everything that the judge was explaining to
him. (Ex. F at 35.)[12]

Accordingly, Ground Two is denied.

Id. at 37-38. The First DCA affirmed the postconviction court's denial of relief.

To the extent that the appellate court decided Leister's claims on the
merits,[13] the Court will address the claims in accordance with the deferential
standard for federal court review of state court adjudications. After a review of
the record and the applicable law, the Court concludes that the state court's
adjudication of the claims was not contrary to clearly established federal law,
did not involve an unreasonable application of clearly established federal law,
and was not based on an unreasonable determination of the facts in light of the
evidence presented in the state court proceedings. Thus, Leister is not entitled
to relief on the basis of these ineffectiveness claims.

Even if the appellate court's adjudication of the claims is not entitled to
deference, Leister's ineffectiveness claims are still meritless. "A plea
conference is not a meaningless charade to be manipulated willy-nilly after the
fact; it is a formal ceremony, under oath, memorializing a crossroads in the
case," and "[w]hat is said and done at a plea conference carries consequences."
Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007) (citation omitted). A

---

[12] See Doc. 8-8 at 115.

[13] See Wilson, 138 S. Ct. at 1192.

defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief on claims that are refuted by sworn representations the defendant made to the trial court).

At the October 23, 2013 plea hearing, Leister stated that he was thinking clearly and was not under the influence of any medication, drug, or any other substance that could interfere with his ability to understand the plea. See Doc. 8-2 at 34; see also id. at 22. Notably, the trial judge stated, "You certainly appear to be thinking quite clearly." Doc. 8-2 at 34. Approximately one month later, Leister filed a pro se motion to withdraw the plea. See id. at 24. In the motion, Leister asserted that counsel failed to provide him with all of the facts (specifically exculpatory evidence that allegedly would have supported an insanity defense at trial), and requested that the court permit him to withdraw his plea and proceed to trial. See id. Additionally, Leister filed a counseled motion to withdraw in February 2014. See id. at 55-56. At a hearing on the motion, counsel Bateh affirmed that he and Till (Leister's prior attorney) discussed the facts with Leister, reviewed the evidence with him, and gave him copies of the discovery associated with the case. See Doc. 8-8 at 90-91, 98-99. Also, Leister confirmed that he understood what transpired at the plea

hearing. See id. at 115. The court denied Leister's request to withdraw the plea, finding that "there is not good cause for withdrawal of the plea." Id. at 130.

Even assuming arguendo deficient performance by defense counsel for failing to act as Leister suggests, Leister has not shown any resulting prejudice. He has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. If Leister had proceeded to trial, and the jury had found him guilty, he would have faced a possible term of life imprisonment. See Doc. 8-2 at 85, Judgment. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Leister is not entitled to federal habeas relief on the ineffectiveness claims raised in grounds two and seven.

## C. Grounds Three and Eight

As grounds three and eight, Leister asserts that counsel (Assistant Regional Counsel Amanda Kuhn, Florida Bar #16308) was ineffective because she failed to file an adequate motion to withdraw the plea "on the premise that he had not been found competent to proceed." Petition at 21-22, 27, 31; Reply at 2. Leister raised these ineffectiveness claims in his Rule 3.850 motion

(ground three). <u>See</u> Doc. 8-8 at 11-12. The postconviction court denied the Rule

3.850 motion with respect to the claims, stating in pertinent part:

> Defendant claims, Amanda Kuhn, was
> ineffective for failing to file an adequate Motion to
> Withdraw Plea. Specifically, Defendant asserts
> counsel should have argued that Defendant had not
> been found competent to proceed where the Court
> never made a determination on the record that
> competency had been restored. Based on the reasoning
> stated above in Ground One, this claim is denied.

<u>Id.</u> at 39. The First DCA affirmed the postconviction court's denial of relief.

To the extent that the appellate court decided Leister's claims on the

merits, the Court will address the claims in accordance with the deferential

standard for federal court review of state court adjudications. After a review of

the record and the applicable law, the Court concludes that the state court's

adjudication of the claims was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Thus, Leister is not entitled

to relief on the basis of these ineffectiveness claims.

Even if the appellate court's adjudication of the claims is not entitled to

deference, Leister's ineffectiveness claims are still without merit because the

record supports the postconviction court's conclusion. Counsel cannot be

deficient for failing to raise a meritless argument.[14] <u>See</u> <u>Diaz v. Sec'y for the</u> <u>Dep't of Corr.</u>, 402 F.3d 1136, 1142 (11th Cir. 2005). As such, Leister has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming deficient performance by defense counsel, Leister has not shown any resulting prejudice. Thus, his ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Leister is not entitled to federal habeas relief on the ineffectiveness claims raised in grounds three and eight.

### D. Ground Five

As ground five, Leister asserts that counsel Bateh was ineffective because he interfered with Leister's right to withdraw his plea. <u>See</u> Petition at 15, 27, 31; Reply at 2. Leister raised this ineffectiveness claim in his amended Rule 3.850 motion, as ground five. <u>See</u> Doc. 8-8 at 18. The circuit court denied his request for postconviction relief with respect to the claim, stating in pertinent part:

> Defendant claims, Michael Bateh, was ineffective when he interfered with Defendant's right to withdraw his previously entered guilty plea. He asserts he entered his plea based on counsel's presentation of the case and the promise he would pursue an insanity defense. Defendant states counsel was ineffective for not consulting with him before

---

[14] <u>See</u> Doc. 8-8 at 60 ("I find that Mr. Leister is competent.").

abandoning the agreed upon insanity defense and for not revealing important mitigating evidence to support the insanity defense. Defendant states that after the plea hearing, he was made aware of an incident which occurred about two weeks before the crime in this case where the police were called to his residence because he was threatening to harm himself. Defendant avers counsel knew of this incident at the time of the plea. He opines the prior incident could have been used to show his state of mind before the attack on his wife, and claims had he known of this incident before he entered his plea, he would not have entered his plea and would have opted to proceed with an insanity defense.

To the extent Defendant claims counsel was ineffective for abandoning the insanity defense without consulting with Defendant, this claim is refuted by the plea colloquy and the Plea Form. The Plea Form, which Defendant acknowledged in open court at the time of the plea, is essentially Defendant's written testimony to the trial court regarding his understanding of his plea. (Ex. A; Ex. E at 7-8.) Moreover, Defendant stated he read the Plea Form, his attorney went over everything on the form with him and answered his questions and fully explained the form, and he signed the form after reading and understanding it. (Ex. E at 7-8.) Within Defendant's plea agreement, Defendant stated:

> My attorney and I have read this agreement regarding my guilty plea together in private, and my attorney has explained all portions of this agreement to my complete understanding and satisfaction. We have fully discussed all aspects of the case, including all possible defenses to all charges, including self-defense and any defense based upon any disability, disease, insanity, or intoxication. My attorney has given me

the opportunity to ask questions and has answered all of my questions fully and completely. My attorney has taken all actions requested by me, or has explained to my satisfaction and agreement why such actions should not be taken, and I concur with my attorney's decisions in that regard. I am completely satisfied with the services rendered by my attorney on my behalf in this case.

(Ex. A.)

During the plea colloquy, Defendant further testified he was satisfied with his attorney's representation[,] and he was entering the plea on his own free will. (Ex. E at 10-11.) The Court explained and Defendant acknowledged the rights he was giving up by entering a plea. (Ex. E at 12-14.) Additionally, at the time he entered his plea, Defendant was aware there was evidence available to support an insanity defense. Defendant knew a doctor had found he was insane at the time of the offense. (Ex. F at 38-39.)

By pleading guilty to an offense, a defendant waives his or her right "to have counsel investigate or put forward a defense, including filing motions to suppress." Clift v. State, 43 So. 3d 778, 779 (Fla. 1st DCA 2010). "Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge." Id.[;] See also Smith v. State, 41 So. 3d 1037, 1040 (Fla. 1st DCA 2010). Further, a defendant "cannot assert that his plea was not knowingly and voluntarily entered where he concedes he was well aware of his counsel's deficiencies prior to the entry of his plea." Davis v. State, 938 So. 2d 555, 556-57 (Fla. 1st DCA 2006). Moreover, a defendant may not seek to go behind his sworn testimony at a plea hearing in a postconviction motion. Stano v. State, 520 So. 2d 278, 280 (Fla. 1988);

Dean v. State, 580 So. 2d 808, 810 (Fla. 3d DCA 1991);
Iacono v. State, 930 So. 2d 829, 831 (Fla. 4th DCA
2006).

Even if counsel did not inform Defendant about
his change in tactics, Defendant entered his plea
knowing he was abandoning any defenses, including
an insanity defense. The record shows Defendant
knowingly, intelligently[,] and voluntarily entered his
plea and counsel was not ineffective, as alleged, for
abandoning an insanity defense without consulting
with Defendant. (Ex. A; Ex. E.) Further, Defendant
may not go behind his sworn testimony during the plea
hearing and now raise claims alleging counsel was
ineffective. See Stano, 520 So. 2d at 279.

To the extent Defendant claims Defense Counsel
was ineffective for failing to inform him of facts that
would have supported an insanity defense, and for
failing to move to withdraw his plea, these claims are
also refuted by the record. First, Defendant filed a
Motion to Withdraw Plea and had a full hearing on the
Motion with an opportunity to testify and present his
argument to the Court. (Ex. F.) Therefore, Defendant
was not prejudiced by counsel's failure to move to
withdraw his plea.

Second, the record of the Motion to Withdraw
Plea hearing refutes Defendant's claim that counsel
was ineffective for failing to inform him of facts that
would have supported an insanity defense. At the
hearing, Michael Bateh, Esquire, testified that he and
Defendant's prior attorney [(Quentin Till)] discussed
all the facts with Defendant, gave him copies of his
discovery, went over all the evidence with him in this
case, and never declined to give Defendant discovery.
(Ex. F at 10-11, 16-20, 23-24.) The discovery provided
included all police reports, medical examiner reports,
pictures, and doctor evaluations. (Ex. F at 11.) Mr.
Bateh testified Defendant had a lot of concern about
two particular officers that came out to Defendant's

house prior to the actual incident. (Ex. F at 20-21.) Mr. Bateh indicated they spoke with those officers and, despite there being evidence they had been to Defendant's house, neither officer remembered going to the house or an incident with Defendant. (Ex. F at 20-21.) Mr. Bateh also testified that the doctors who evaluated Defendant and found him insane were provided the arrest and booking reports, supplemental reports, videos, and anything that would help them in their understanding of Defendant and the case itself. (Ex. F at 46.)

At the hearing, Defendant testified that after he entered his plea he saw some discovery he had not seen before, and indicated if he had seen it before, he would not have entered his plea and would have pursued a not guilty by reason of insanity defense. (Ex. F a[t] 31-32.) He went on to testify that the discovery he received was a supplemental report that included statements from a neighbor regarding Defendant going to his house and claiming his wife and daughter were trying to poison him. (Ex. F at 32, 35-36.) He also testified that the supplement showed that when police arrived at his home following the instant offense, he was telling them to shoot him. (Ex. F at 36.) The Court found Defendant did not show there was any truth to his allegations and denied his Motion to Withdraw Plea. (Ex. F at 50-51.)

The Court clearly did not believe the allegations made by Defendant in the Motion to Withdraw Plea hearing, and though the prior incident at issue at that hearing was different than the prior incident at issue in this ground, the testimony regarding pre-trial discovery, pre-trial investigation, and the doctor's evaluations is applicable to the instant Motion as well. Based on the testimony from the Motion to Withdraw Plea hearing, Defendant was provided all discovery prior to his plea, and the doctors who evaluated Defendant were provided with all reports that would help in their evaluations. Further, Mr. Bateh testified

29

regarding his investigation into an event that occurred
before the offense in the instant case, and indicated
the officers who purportedly came to Defendant's
house could not recall the incident. It cannot be
conclusively determined if that is the same incident as
the one at issue in the instant ground, however, the
testimony regarding Mr. Bateh's investigation into
such incident is relevant to show that he was [sic]
investigated Defendant's prior history. Based on the
foregoing, the Court finds Defendant[] cannot
establish counsel was ineffective in the manner
alleged in Ground Five.

Of note, in his present Motion, Defendant states
he learned of the incident upon which this ground is
based "only days after he entered his plea." (Def.'s Mot.
For Leave to Amend his Mot. For Postconviction Relief
Under Rule 3.850, 2.) Defendant entered his plea on
October 23, 2013, and the Court heard his Motion to
Withdraw Plea on February 19, 2014. (Exs. A; F.)
Defendant had the opportunity to raise this issue
before the Court at the hearing when the Court
inquired about the basis for his Motion to Withdraw
Plea, but Defendant did not state anything about
learning the police had been called to his house
because he was threatening to harm himself.

Id. at 39-43. The First DCA affirmed the postconviction court's denial of relief.

To the extent that the appellate court decided Leister's claim on the

merits, the Court will address the claim in accordance with the deferential

standard for federal court review of state court adjudications. After a review of

the record and the applicable law, the Court concludes that the state court's

adjudication of the claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Leister is not entitled to relief on the basis of this ineffectiveness claim.

Even if the appellate court's adjudication of the claim is not entitled to deference, Leister's ineffectiveness claim is meritless. Leister has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming deficient performance by defense counsel, Leister has not shown any resulting prejudice. Thus, his ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Leister is not entitled to federal habeas relief on the ineffectiveness claim raised in ground five.

### E. Grounds Four and Nine

As grounds four and nine, Leister asserts that the cumulative effect of his counsels' errors (as alleged in grounds one, two, three, and five) deprived him of a fair trial. See Petition at 23, 27; Reply at 2. Leister raised these ineffectiveness claims in his Rule 3.850 motion (ground four). See Doc. 8-8 at 12-13. The postconviction court denied the Rule 3.850 motion with respect to the claims, stating in pertinent part:

> Defendant claims the cumulative effect of counsel's errors entitle[s] him to relief. Based on the reasoning stated above in Grounds One, Two, and

31

Three, and below in Ground Five, Defendant's claims are meritless or do not meet the <u>Strickland</u> standard for ineffective assistance of counsel. Therefore, the Court finds Defendant's claim of cumulative error also lacks merit. <u>See</u> <u>Parker v. State</u>, 904 So. 2d 370, 380 (Fla. 2005) ("[W]here the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails."). Accordingly, Ground Four is denied.

<u>Id.</u> at 39. The First DCA affirmed the postconviction court's denial of relief.

To the extent that the appellate court decided Leister's claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Leister is not entitled to relief on the basis of these ineffectiveness claims.

Nevertheless, even if the appellate court's adjudication of the claims is not entitled to deference, Leister's ineffectiveness claims are without merit because the record supports the postconviction court's conclusions. Where all individual claims are meritless, the claims of cumulative error are also without merit. <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012); <u>Lundberg v. Sec'y, Fla. Dep't of Corr.</u>, 808 F. App'x 725, 738 (11th Cir. 2020).

As explained in greater detail above, each of Leister's ineffectiveness claims is meritless. Thus, his assertions of cumulative error are likewise without merit. Accordingly, Leister is not entitled to federal habeas relief on his claims in grounds four and nine.

## VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Leister seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Leister "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335-36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason

33

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Leister appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of April, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-1 4/8
c:
Gary Lee Leister, FDOC #J51495
Counsel of Record